IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | |
|---|---|
| PEDRO CANALES LAZALDE, § § *Petitioner*, § § v. § § KRISTI NOEM, Secretary, U.S. Department of Homeland Security; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; MARCOS CHARLES, Acting Executive Associate Director, ICE and Removal Operations; PAMELA J. BONDI, United States Attorney General; and WARDEN, IAH Secure Adult Detention Facility, § § § § § § § § § § § *Respondents*. § | CIVIL ACTION NO. 9:25-CV-00356 JUDGE MICHAEL J. TRUNCALE |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

Before the Court is Pedro Canales Lazalde's petition for writ of habeas corpus (the Petition), filed on December 25, 2025. [Dkt. 1]. For the reasons below, the Motion is **DENIED.**

**I. BACKGROUND**

Petitioner Pedro Canales Lazalde (Lazalde) is a foreign national who entered the United States illegally.[1] [Dkt. 1 at ¶ 34]. In late 2025, immigration authorities apprehended Lazalde, placed him in detention, and instituted removal proceedings against him. *Id.* at ¶ 35. While in custody, Lazalde requested a bond hearing before an immigration judge. *Id.* at ¶ 36. However, the immigration judge denied his request, citing a lack of jurisdiction. *Id.* On December 25, 2025, Lazalde filed this habeas action, challenging the legality of his detention on several grounds, including his failure to receive a bond hearing. [Dkt. 1].

---

[1] In his Petition, Lazalde admits to entering the United States "without inspection." [Dkt. 1 at ¶ 34]. It is illegal to "elude examination or inspection by immigration officers" when entering the United States. *See* 8 U.S.C. § 1325.

1

## II. LEGAL STANDARD

Habeas petitions under 28 U.S.C. § 2241 serve the "sole function" of challenging the legal basis for the petitioner's detention. *Pierre v. U.S.*, 525 F.2d 933, 935–36 (5th Cir. 1976). Section 2241 entitles five classes of prisoners to habeas relief, including prisoners held "in violation of the Constitution or laws, or treaties of the United States." 28 U.S.C. § 2241(c)(3). In a habeas proceeding, the petitioner bears the burden of proof and must demonstrate by a preponderance of the evidence that he is being held unlawfully. *Villanueva v. Tate*, No. H-25-3364, 2025 WL 2774610 at *4 (S.D. Tex. Sep. 26, 2025).

## III. DISCUSSION

Here, Lazalde claims to be detained in violation of three federal laws: the Immigration and Naturalization Act (INA), the INA's accompanying regulations, and the Due Process Clause of the Fifth Amendment. [Dkt. 1 at 4–5]. The Court addresses each claim in turn.

### A. Immigration and Naturalization Act

Lazalde first claims to be unlawfully detained under 8 U.S.C. § 1225(b)(2)(A), which provides for the mandatory detention of "applicants for admission" who are not deemed "clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A). According to Lazalde, aliens who, like him, entered the United States without inspection years ago, are not "applicants for admission" under section 1225(b)(2)(A). [Dkt. 4 at ¶¶ 32–33]. Instead, Lazalde argues that 8 U.S.C. § 1226(a) applies to cases like his. Under section 1226(a), an alien "may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General has discretion to release or "continue to detain" aliens detained pursuant to section 1226(a). *See id.* § 1226(a)(1)–(2).

Despite his protestations, section 1225 plainly applies to Lazalde. The statute's first sentence provides that "an alien present in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission." *Id.* An alien has been "admitted" once he has

2

made "lawful entry . . . into the United States *after inspection* and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A) (emphasis added). Together, these provisions establish that an alien is an applicant for admission if he (1) entered the United States without inspection and (2) remains present in the country. *See id.*; § 1225(a)(1).

By Lazalde's own admission, he entered the United States without inspection and is still present in the country. [Dkt. 1 at ¶ 34]. Accordingly, he is an "applicant for admission" under section 1225. *See* 8 U.S.C. § 1225(a)(1). Further, because Lazalde is charged with removability, an immigration officer necessarily found that Lazalde was "not clearly and beyond a doubt entitled to be admitted." *See id.* Thus, section 1225 dictates that Lazalde, an applicant for admission who was not deemed clearly and beyond a doubt entitled to be admitted, "shall be detained" during removal proceedings. *Id.* § 1225(b)(2)(A).

However, the inquiry does not end with section 1225. On its face, section 1226(a) also applies to Lazalde, since it provides that "an alien"—any alien—"may be arrested and detained" pending removal proceedings. § 1226(a). The Attorney General "may continue to detain the alien" or decide to release the alien on bond. § 1226(a)(1)–(2). Because section 1226(a) does not distinguish between aliens who are applicants for admission and those who are not, it squarely conflicts with section 1225 in cases like Lazalde's. *See* § 1225(b)(2)(A); § 1226(a). If section 1225 requires an alien's detention, the Attorney General necessarily has no discretion to release the alien. *See* § 1225(b)(2)(A). Yet, section 1226(a) purports to give the Attorney General that exact discretion. *See* § 1226(a). Something must give.

A "basic principle of statutory construction" easily resolves the conflict between the two provisions. *See Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976). When two statutes, one general and one specific, apply to the same subject matter, the more specific statute controls unless the legislature clearly intended otherwise. *See Radzanower*, 426 U.S. at 153; *Morton v. Mancari*, 417 U.S. 535, 550–51 (1974). Here, section 1225(b)(2)(A), which applies only to a narrow class of aliens, is the

3

more specific statute. *See* 8 U.S.C. § 1225(b)(2)(A). Further, Congress did not clearly intend for section 1226(a) to displace or supersede section 1225(b)(2)(A).[2] *See Radzanower*, 426 U.S. at 153; *Morton*, 417 U.S. at 550–51. Accordingly, section 1225(b)(2)(A), not section 1226(a), applies here. *See Radzanower*, 426 U.S. at 153; *Morton*, 417 U.S. at 550–51. Because Lazalde is an applicant for admission who was not found to be clearly entitled to admission, section 1225 provides that he "shall be detained" pending removal. *See* 8 U.S.C. § 1225(b)(2)(A). Accordingly, Lazalde is not entitled to a bond hearing and the Government's failure to afford him a bond hearing does not violate the INA. *See id.*

### B. Federal Regulations

Lazalde next argues that, even if the INA itself does not entitle him to a bond hearing, its accompanying regulations do. [Dkt. 4 at 4]. This argument suffers from two flaws, both fatal. First, the regulations that Lazalde cites are inapplicable because they apply only to aliens detained under section 1226(a). *See generally* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). No analogous regulations exist for aliens detained under section 1225(b)(2)(A), like Lazalde, since those aliens are categorically ineligible for bond. *See* 8 C.F.R. § 235.1 et seq.

Second, even if section 1226(a)'s regulations applied to Lazalde, his reading of those regulations is untenable. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Nothing in the text of the regulations suggests that bond hearings are absolutely required. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). The regulations state only that an alien in removal proceedings "may request" a bond hearing before he is ordered removed. *Id.* §§ 236.1(d)(1), 1236.1(d)(1). They are silent as to when, if ever, immigration judges are required to grant bond-hearing requests. *See id.* §§ 236.1(d)(1), 1236.1(d)(1). Because the regulations use no mandatory language and lay out no parameters for granting or denying bond-hearing requests, the Court does not read them to strictly require bond hearings. *See id.* §§ 236.1(d)(1),

---

[2] If section 1226(a) applied in cases like Lazalde's, section 1225(b)(2)(A) would not apply anywhere. The Court doubts that Congress would have enacted section 1225(b)(2)(A) despite knowing that that it would serve no purpose.

1236.1(d)(1). This reading is consistent with the discretionary nature of section 1226(a), which permits the Attorney General to "continue to detain" arrested aliens instead of granting them bond. *See* 8 U.S.C. § 1226(a)(1)–(2). Immigration judges, who "act as the Attorney General's delegates in the cases that come before them," presumably enjoy the same discretion and can exercise it by denying bond-hearing requests. *See* 8 C.F.R. § 1003.11(a). Accordingly, the Government did not violate federal regulations by denying Lazalde a bond hearing. *See id.* §§ 236.1(d)(1), 1236.1(d)(1).

### C. Due Process

Third, Lazalde argues that the Government denied him due process by detaining him without a bond hearing. *See* [Dkt. 1 at ¶ 49]. This argument, even if meritorious, is not properly raised in a habeas petition. *See Carson v. Johnson*, 112 F.3d 818, 820–21 (5th Cir. 1997) (Smith, J.). Lazalde's due-process challenge is directed not at the lawfulness of his confinement *per se*, but the lawfulness of the Government's failure to provide a bond hearing. *See* [Dkt. 1 at ¶ 49]. The underlying basis for his confinement—his unlawful entry into the United States—is undisputedly valid. *See id.* at ¶ 34. Accordingly, Lazalde's due-process claim is ill-suited for a habeas proceeding, which is "not available to review questions unrelated to the *cause of detention*." *See Pierre*, 525 F.2d at 935 (emphasis added).

Due-process challenges to procedures like bond hearings, which "affect[] the timing of [a prisoner's] release from custody," must normally be brought via civil-rights action, not in habeas proceedings. *See Carson*, 112 F.3d at 820–21. A habeas petition is the proper device for raising such a challenge only when the challenged procedure would result in the petitioner's automatic release from custody if adequately performed. *See id.*

Here, a properly conducted bond hearing would not invariably result in Lazalde receiving a bond. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Even if a bond hearing occurs, the presiding immigration judge may order the alien's continued detention. *Id.* §§ 236.1(d)(1), 1236.1(d)(1). Because a bond hearing would not have guaranteed Lazalde's release from custody, his failure to receive one does not entitle him to habeas relief. *See Carson*, 112 F.3d at 820–21. If a violation of due process

5

occurred, it was not via Lazalde's detention, but through the Government's failure to provide him with a bond hearing once he was already detained. *See* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1). Accordingly, a habeas petition is not the proper vehicle for Lazalde to raise his due-process claim. *See Carson*, 112 F.3d at 820–21.

## IV. CONCLUSION

Because Lazalde has failed to demonstrate by a preponderance of the evidence that his detention violates federal law, he cannot obtain habeas relief under 28 U.S.C. § 2241(c)(3).

It is therefore **ORDERED** that Lazalde's Petition for Writ of Habeas Corpus [Dkt. 1] is hereby **DENIED**.

This constitutes a **FINAL JUDGMENT** and the Clerk is **INSTRUCTED** to close this matter.

**SIGNED this 5th day of January, 2026.**

*[signature]*

Michael J. Truncale
United States District Judge

6